Brett M. Anders, Esq. (Bar ID #015201997)
Eliza L. Lloyd, Esq. (Bar ID #111352014)
JACKSON LEWIS P.C.
220 Headquarters Plaza
East Tower, 7th Floor
Morristown, New Jersey 07960
(973) 538-6890
ATTORNEYS FOR DEFENDANT

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARGARET GALLAGHER,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>IQVIA,<br><br>　　　　　　Defendant. | Hon. _____, U.S.D.J.<br><br>Civil Action No. __ - _____ (__/__)<br><br>**NOTICE AND PETITION FOR REMOVAL OF CASE FROM THE SUPERIOR COURT OF NEW JERSEY, LAW DIVISION, SOMERSET COUNTY** |

TO: William T. Walsh, Clerk of Court
　　　United States District Court for the District of New Jersey
　　　Clarkson S. Fisher Building & U.S. Courthouse
　　　402 East State Street, Room 2020
　　　Trenton, NJ 08608

　　　Charles Z. Schalk, Esq.
　　　Savo, Schalk, Gillespie, O'Grodnick & Fisher, P.A.
　　　77 North Bridge Street
　　　Somerville, NJ 08876
　　　Attorneys for Plaintiff

　　　　　Pursuant to 28 U.S.C. §§ 1331, 1441, and 1446, Defendant IQVIA Inc. (improperly pled as "IQVIA") ("IQVIA" or "Defendant"), respectfully submits this Notice and Petition for Removal of a case from the Superior Court of New Jersey, Law Division, Somerset County, bearing Docket No. SOM-L-1482-18, and as grounds for removal, states as follows:

　　　　　1.　　　Plaintiff, Margaret Gallagher ("Plaintiff"), has brought a civil action against Defendant in the Superior Court of New Jersey, Law Division, Somerset County,

captioned <u>Margaret Gallagher v. IQVIA</u>, Docket No. SOM-L-1482-18. This action was commenced by the filing of a Complaint on November 29, 2018, a copy of which is attached hereto as Exhibit A.

2. Defendant was served with a copy of the Summons and Complaint on or after November 29, 2018.

3. No proceedings have taken place in the state court action. Defendant has not served an answer or responsive pleading to Plaintiff's Complaint or made any appearance or argument before the Superior Court of New Jersey.

4. This Notice of Removal is timely filed within the provisions of 28 U.S.C. § 1446(b). Defendant effected removal within thirty (30) days of receipt of a paper from which it could first be ascertained that this action is removable. See 28 U.S.C. § 1446.

5. This action arises out of Plaintiff's claims in her Complaint that her employment was unlawfully terminated on or around October 8, 2018.

6. In the Complaint, Plaintiff alleges, *inter alia*, that Defendant violated her rights under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.* See Exhibit A, Plaintiff's Complaint, at Count Three.

7. Accordingly, this action is removable to this Court on the ground that original jurisdiction over Plaintiff's claims exists pursuant to 28 U.S.C. § 1331, by virtue of its federal question jurisdiction arising out of Plaintiff's claims under the FMLA, 29 U.S.C. § 2601, *et seq.*

8. Pursuant to 28 U.S.C. §1441(a), this action may be removed to this Court because it is founded, in part, on claims or rights arising under the laws of the United States.

9. Pursuant to 28 U.S.C. §§ 1367 and 1441(c), this Court has supplemental jurisdiction over Plaintiff's additional two (2) causes of action: (1) disability and age discrimination in violation of the New Jersey Law Against Discrimination ("LAD"), N.J.S.A. § 10:5-1 *et seq.* (Count One); and (2) discrimination in violation of the New Jersey Workers Compensation Act ("WCA"), N.J.S.A. § 34:15-39.1 (Count Two). See Exhibit A, Plaintiff's Complaint, at Counts One and Two.

10. Venue is proper in this Court pursuant to 28 U.S.C. §1441(a).

11. Defendant files this Notice of Removal without waiving any defenses to the claims asserted by Plaintiff or conceding that Plaintiff has pled claims upon which relief can be granted.

12. Pursuant to 28 U.S.C. § 1446(d), Defendant has given written notice of the removal of this action to all adverse parties, and has filed a copy of this notice with the Clerk of the Superior Court of New Jersey, Law Division, Somerset County.

WHEREFORE, Defendant respectfully requests that the within action, now pending in the Superior Court of New Jersey, Law Division, Somerset County, be removed to the United States District Court for the District of New Jersey.

Respectfully submitted,

JACKSON LEWIS P.C.
220 Headquarters Plaza
East Tower, 7th Floor
Morristown, New Jersey 07960

By:   /s/ Brett M. Anders
Brett M. Anders
Eliza L. Lloyd
Attorneys for Defendant

Dated: December 28, 2018
440609/4842-4640-2434, v. 1

# EXHIBIT "A"

SAVO, SCHALK, GILLESPIE, O'GRODNICK & FISHER, P.A.
Charles Z. Schalk, Esq. (NJ Bar ID# 020621991)
77 North Bridge Street
Somerville, New Jersey 08876
(908) 526-0707; (908) 725-8483 (fax); schalk@centraljerseylaw.com
Attorneys for Plaintiff Margaret Gallagher

| MARGARET GALLAGHER, | : SUPERIOR COURT OF NEW JERSEY |
| --- | --- |
| | : LAW DIVISION:SOMERSET COUNTY |
| Plaintiff, | : DOCKET NO. |
| | : |
| vs. | : Civil Action |
| | : |
| IQVIA, | : COMPLAINT AND JURY DEMAND |
| | : |
| Defendant. | : |

Plaintiff, Margaret Gallagher, an individual residing at 901 Country Club Road, Township of Bridgewater, County of Somerset, State of New Jersey, by way of complaint against the defendant, says:

### INTRODUCTION

1. At all relevant times, defendant IQVIA (hereinafter referred to as "IQVIA" or the "company" or the "defendant"), was and is a company with offices in the State of New Jersey including those located at 200 Corporate Center Drive, Township of Warren, County of Somerset, State of New Jersey.

2. The New Jersey Law Against Discrimination ("LAD") provides that it is unlawful

to discriminate against persons in their employment due to their age and disability.

3. The New Jersey Workers Compensation Act ("WCA") prohibits retaliation against an employee because she has pursued or exercised her rights under the workers compensation statute.

4. The Federal Family and Medical Leave Act ("FMLA") requires that the employer protect the employee's job during leave and to restore the employee to the same or similar position upon the employee's return to work.

5. It is unlawful for an employer to withhold these protections or discriminate or terminate an employee who attempts to exercise his or her rights.

6. These laws provide significant penalties for wrongdoing including compensatory damages, lost wages and benefits, reinstatement with back pay, financial penalties, payment of attorney's fees and costs, and punitive damages.

7. Plaintiff Margaret Gallagher is an intelligent, accomplished and respected 60 year-old woman.

8. The plaintiff began her employment with the company (including its predecessor entities) serving Sanofi in Bridgewater, New Jersey on February 9, 2009.

9. Prior to her unlawful termination, the plaintiff was earning a salary of $168,526.78 plus bonus for a total of approximately $177,000 annual compensation with the job title of Marketing Operations Manager.

10. At all times, the plaintiff was a loyal employee and her work was exemplary.

11. In February 2009, the plaintiff was recruited by the Marketing Director at Sanofi to provide marketing and operations support for the oncology franchise.

2

12. Initially, the plaintiff was the Project Manager/Operations Manager for Uroxatral.

13. This position evolved into providing support for multiple brands over the course of a decade up until the time of the plaintiff's termination.

14. Beginning October 2009, the plaintiff was the Project Manager on the team to provide support to design, develop and execute Diabetes Support Programs with the CDE Help Team and A1C Champions.

15. From 2009-2011, the plaintiff was the Operations Manager in charge of coordinating all partners, including Creative Agency, Digital Agency, Database Vendor, Fulfillment Center and Customer Service, for the launch of multiple CRM Programs.

16. All these programs were launched flawlessly and on budget.

17. In late 2011, the plaintiff was asked by Sanofi management to serve as the Project Manager for the launch of a groundbreaking blood glucose monitoring system iBGStar because the project was falling behind schedule and due to be live in the market September 1, 2012.

18. Due to the plaintiff's efforts, the project was pulled together and launched on schedule, and the Brand Team presented her with the iBGStar award for Excellent Service.

19. In 2012, the plaintiff was the Project Manager on the team that developed, executed and managed the Multiple Myeloma Journey Partners Program to provide personalized peer-to-peer support for patients with Multiple Myeloma.

20. The program consisted of one-on-one and group presentations to educate patients suffering from Multiple Myeloma and is still running to this day.

21. From 2012 to 2016, the plaintiff managed the CDE Help Team, Toujeo COACH Peer Program and A1C Champions.

3

22. In January 2015, the plaintiff was asked by Sanofi management to assist with the development of a centralized system to track all Sanofi Patient facing projects to ensure that there were meeting FDA requirements and to prepare for an audit by the FDA.

23. The plaintiff coordinated the development of a SharePoint database system to house all relevant program documents.

24. The plaintiff was also responsible for scheduling and running all meetings between Brand Managers, Regulatory, Legal, Medical and Pharmacovigilance to review current and new projects to ensure that all programs comply with FDA requirements.

25. In 2017 and 2018, the plaintiff was the Operations Manager for all consumer projects for PRALUENT, Apidra, Admelog and Multaq Brands.

26. The plaintiff worked on the team to seamlessly migrate the MyPraluent patient support program to three new vendors and all aspects of the transition were executed on time and on budget.

27. The plaintiff coordinated the website launch when Admelog was available to patients.

28. In fact, the website was ready to launch one week early and management noted that this was unprecedented for a new site launch to be ready early.

29. Others referenced the plaintiff's invaluable ability to "always launch your programs ahead of time."

30. In addition, with regard to Apidra, the plaintiff began the development of the launch of a new site scheduled for late first quarter 2019.

31. By way of background, the plaintiff's marketing experience is rich and deep and

4

includes previous employment with AT&T, Novartis and Harrisdirect in senior level positions.

23. The plaintiff has a Bachelor of Science degree in marketing from Villanova University and M.B.A. from Seton Hall University.

24. The plaintiff was a highly regarded employee at the company.

25. The plaintiff's personnel record reflects consistent and sustained exemplary reviews.

26. The plaintiff had many and varied achievements which she brought to the company for a long period of time.

27. The plaintiff's compensation history with the company tracks and mirrors her many accomplishments with repeated large salary increases to reward her fine work.

28. This includes a sizable increase, just three months before the plaintiff's termination, from $164,096.18 to $168,526.78 effective July 1, 2018.

29. In the plaintiff's most recent evaluation conducted in April 2018, just four months before her termination, her manager stated, "Maggie works to deliver projects on time and accurately. She will continue to grow in her Sanofi and IQVIA roles by focusing on the highlighted areas . . . She can be counted on to get the job done."

30. Being 60 years old, the plaintiff was the oldest and one of the highest paid employees in her area.

31. Despite outstanding accomplishments, productivity and recognition, IQVIA not so subtly terminated the plaintiff on October 8, 2018 because of her age.

32. When the plaintiff was terminated, she was specifically told that her termination "was not a reflection on her contribution" so the company cannot now suddenly claim her

5

performance was the reason for this unlawful termination.

33. When pressed further, the corporate Human Resources representative Nikki Hand stated in writing on October 10, 2018 that the reason for the plaintiff's termination was allegedly because of a "restructuring".

34. However, and again the company was not too smart in trying to cover its tracks, ten days later on October 20, 2018, openly posted the plaintiff's exact position.

35. Therefore, the company's claimed reason for the termination also is blatantly false as there was no restructuring.

36. The only thing that happened was a one-person RIF in which the company terminated its oldest employee in this department in a blatant act of age discrimination presumably to fill the position with someone younger and cheaper.

37. This is reprehensible and an attempt to mask discrimination by stating a sham non-discriminatory reason.

38. The company's sham stated reason for this termination is further crippled by the events which occurred post-notification of the plaintiff's termination.

39. In particular, on October 1, 2018, the plaintiff was in the Sanofi office to attend a meeting and communicated with her Sanofi Brand Managers that she would be off the Sanofi account effective October 5, 2018 and they were all shocked as they were not notified by IQVIA management.

40. The plaintiff's Sanofi Brand Manager for Apidra stated, "I can't believe this, I was depending on you to manage the launch of the new Apidra site since I'm so busy working on other projects."

6

41. This sentiment was echoed by the plaintiff's Brand Managers for PRALUENT, Multaq and Admelog, as well as her previous manager whom she reported to from April 2017 to August 2018, who was very concerned because she thought she had input into the decision.

42. The plaintiff's previous manager stressed that she did not and wanted to keep the plaintiff on her brands PRALUENT and Multaq.

43. Adding a further complication for IQVIA in this matter are the following additional facts.

44. In particular, the plaintiff suffers from lateral epicondylitis caused by conditions in her workplace and which was repeatedly documented in the company's system as a workers compensation claim since early 2018.

45. The plaintiff's condition required accommodation with certain restrictions.

46. When less invasive treatment failed, the plaintiff was scheduled for surgery for November 7, 2018.

47. In the midst of requiring surgery, requiring medical leave and asserting a workers compensation claim, the plaintiff was terminated, as set forth above, for reasons which make no logical business sense.

48. Ironically, under the stated Corporate Responsibility contained on IQVIA's web site, it states "Wherever IQVIA does business in the world, the fundamental values of honesty, integrity and ethical conduct form the core of everything we do. Our reputation is shaped by the personal decisions of every employee. IQVIA staff strive to be decent and fair-minded, and we do what is right on the job, even in the most difficult situations."

49. Unfortunately, these words are mere lip service and are not backed up by action.

7

50. Defendant IQVIA was not honest, lacked integrity and was not fair or decent in terminating this valuable, hard-working 60 year-old woman.

51. Under the LAD, it is unlawful for an employer to discriminate due to an employee's age and disability.

52. Under the New Jersey Workers Compensation Act, it is illegal to retaliate against an employee because she has pursued or exercised her rights under the workers compensation statute.

53. Under the FMLA, an employee's job must be protected during medical leave, and it is against the law to terminate someone because they take medical leave.

54. Unfortunately, defendant IQVIA violated all these laws.

55. After a decade of outstanding loyal employment, plaintiff Margaret Gallagher was rewarded for this valuable service with a termination based on the unlawful factors of age, disability, asserting claims for workers compensation and taking medical leave.

56. These actions by defendant IQVIA and its management team violate New Jersey's Law Against Discrimination, the New Jersey Workers Compensation Act and the Federal Family and Medical Leave Act.

57. At the age of 60 with ongoing serious medical conditions to contend with, the plaintiff is now unemployed, left with the prospect of attempting to find replacement employment at an advanced age, with the blemish of a termination on her record, while trying to keep herself healthy with significant medical conditions and necessary medical treatment required without medical coverage.

58. It is likely to take a significant length of time to find new employment, and if and

8

when the plaintiff is able to find replacement employment, it is likely that she will have to take a substantial cut in compensation and benefits.

59. In addition, the plaintiff has now lost her accumulated benefits, seniority and assorted compensation that she had gathered with IQVIA.

60. At great additional cost, the plaintiff now has to scramble to find medical coverage for medical treatment in the coming year.

61. Furthermore, the unexpected termination has left the plaintiff devastated emotionally and financially, and she suffers from depression, stress, humiliation, sleep difficulties, distress, embarrassment, nervousness, loss of earnings and attorney's fees.

62. As a direct, foreseeable and proximate result of the defendant's unlawful conduct, the plaintiff has suffered and will continue to suffer substantial losses in earnings, benefits, reputation, job experience, retirement benefits and other benefits that she would have received absent defendant's unlawful conduct.

63. As a further direct, foreseeable and proximate result of the above-mentioned acts, the plaintiff has suffered and will continue to suffer humiliation, mental pain and anguish, embarrassment, emotional distress, and pain and suffering.

64. The plaintiff has incurred and will continue to incur significant legal expense in prosecuting these claims.

65. The plaintiff is informed and believes, and based thereon alleges, that the outrageous conduct of the defendant was done with malice, with a conscious disregard of her rights, with the intent, design and purpose of injuring her.

66. By reason thereof, the plaintiff is entitled to punitive damages from the defendant

9

in a sum according to proof at trial.

## COUNT ONE (LAD - DISABILITY AND AGE)

67. The plaintiff repeats her allegations contained in the Introduction as though fully set forth herein.

68. This action is brought pursuant to New Jersey's Law Against Discrimination, N.J.S.A. 10:5-1, *et seq.*, which prohibits discrimination against individuals because of age and disability in the terms, conditions or privileges of employment.

69. The defendant's conduct as alleged in the complaint constitutes unlawful employment practices, unlawful discrimination and failure to accommodate in violation of New Jersey's Law Against Discrimination, N.J.S.A. 10:5-1, *et seq.*

WHEREFORE, plaintiff Margaret Gallagher requests judgment against defendant IQVIA for the following:

a. Compensatory damages, including lost wages (back and front pay), lost benefits, emotional distress damages, and monetary loss;

b. Punitive damages;

c. Attorneys' fees (including enhancements and multipliers) and costs of suit;

d. Prejudgment interest; and

e. Such other and further relief as the court may deem appropriate.

## COUNT TWO (WCA)

70. The plaintiff repeats her allegations contained in the Introduction and Count One as though fully set forth herein.

71. This action is brought pursuant to the New Jersey Workers Compensation Act

10

("WCA"), N.J.S.A. 34:15-39.1 which provides that it is unlawful for an employer to discharge or in any way discriminate against an employee because the employee has claimed or attempted to claim workers compensation benefits from the employer.

72. The defendant's conduct as alleged in the complaint constitutes unlawful employment practices, unlawful discrimination and retaliation in violation of the WCA.

WHEREFORE, plaintiff Margaret Gallagher requests judgment against defendant IQVIA for the following:

a. Compensatory damages, including lost wages (back and front pay), lost benefits, emotional distress damages, and monetary loss;

b. Punitive damages;

c. Attorneys' fees (including enhancements and multipliers) and costs of suit;

d. Prejudgment interest; and

e. Such other and further relief as the court may deem appropriate.

## COUNT THREE (FMLA)

73. The plaintiff repeats her allegations contained in the Introduction and Counts One and Two as though fully set forth herein.

74. This action is brought pursuant to the Federal Family and Medical Leave Act, which requires that the employer protect the employee's job during medical leave and to restore the employee to the same or similar position upon the employee's return to work.

75. It is unlawful for an employer to withhold these protections or to discriminate or terminate an employee who attempts to exercise these rights.

76. The defendant's conduct as alleged in the complaint constitutes unlawful

11

employment practices and unlawful discrimination in violation of the Federal Family and Medical Leave Act.

WHEREFORE, plaintiff Margaret Gallagher requests judgment against defendant IQVIA for the following:

a. Compensatory damages, including lost wages (back and front pay), lost benefits, emotional distress damages, and monetary loss;

b. Punitive damages;

c. Attorneys' fees (including enhancements and multipliers) and costs of suit;

d. Prejudgment interest; and

e. Such other and further relief as the court may deem appropriate.

SAVO, SCHALK, GILLESPIE, O'GRODNICK & FISHER, P.A.
Attorneys for Plaintiff Margaret Gallagher

By: Charles Z. Schalk

Dated: 11/29/18

### DESIGNATION OF TRIAL COUNSEL

Pursuant to R. 4:25-4, Charles Z. Schalk, Esq., is hereby designated as trial counsel for plaintiff in the above matter.

Charles Z. Schalk

Dated: 11/29/18

## CERTIFICATION OF NO OTHER ACTIONS

Pursuant to R. 4:5-1, it is hereby stated that the matter in controversy is not the subject of any other action pending in any other court or of a pending arbitration proceeding to the best of my knowledge or belief. Also, to the best of my knowledge, no other action or arbitration proceeding is contemplated. Further, other than the parties set forth in this pleading, I know of no other parties that should be joined in the above action. In addition, I recognize the continuing obligation of each party to file and serve on all parties and the court an amended certification if there is a change in the facts stated in the original certification.

_____
Charles Z. Schalk

Dated: 11/29/18

## JURY DEMAND

The plaintiff hereby demands a trial by jury on all of the triable issue of this complaint pursuant to R. 1:8-2(b) and R. 4:35-1(a).

_____
Charles Z. Schalk

Dated: 11/29/18

## DEMAND FOR INSURANCE

The plaintiff hereby demands that the defendant identify and produce for inspection and copying, all policies of insurance which may provide coverage for some or all of the claims asserted herein, including but not limited to, employer liability, general liability, directors and officers, and homeowners.

_____
Charles Z. Schalk

Dated: 11/29/18

13